May it please the Court, my name is Sarah Jones and I represent the petitioner in this matter, Mr. Juan Coleen Leo. As many of the cases, both of the cases prior to this one mentioned, my client entered the United States illegally in 1988. In 1992, he assisted his wife to re-enter the United States illegally. And based on that action, the board and the immigration judge held that Mr. Coleen Leon did not possess good moral character. In addition, Mr. Coleen Leon had two convictions of domestic violence, which occurred in 1992. The hearing was held before the immigration judge in 2003. And the judge held and the board concurred with the finding that both the domestic violence convictions and the assistance of entering his wife without legal authority rendered Mr. Coleen unable to establish good moral character. Our argument is that neither of those factors should rise to the level of rendering him unable to establish good moral character. There is no other issue in this case because the service and my client stipulated to the physical presence and the board found the requisite exceptional and extremely unusual hardship. Therefore, the wife is now a legal resident. It's simply the assistance that Mr. Coleen gave to his children that the Department of Homeland Security wishes to characterize as being unable to establish good moral character. In their reply brief, the department itself concedes that the convictions from 1992 for domestic violence are not applicable in this issue. However, they maintain that it's sufficient to render him unable to establish good moral character. We disagree again on this issue, Your Honor. The Moran case has been argued quite well before me. I don't want to go over everything that was previously said, but this is very important to my client and to his life that I reiterate how the Moran case fits squarely within the facts of this situation. He should be allowed to apply for a waiver. Now, the issue of the 1992 alien smuggling being time-barred, this case occurred in 2003. The judge pre-dermitted the case. The BIA decision occurred in 2004. They agreed with the judge's pre-dermission of the case. These issues, I believe, the judge and the board are saying that it's per se failure to establish good moral character if you help to smuggle anyone, and that there is no waiver for a cancellation of removal applicant. The detailed discussion that this court used in this case is not the case itself. It's the case of Mr. Moran to go through the entire waiver found at 8 U.S.C. section 1182A6E. It was the bulk of the argument in Moran. Yes, it led to the ending conclusion that Mr. Moran himself could not avail himself of that, because he did not he was not married to one of the people he helped smuggle, his wife. He was only engaged at that point. There is no dispute in this case that Mr. Colleen is married to his wife and that he was married to her in 1992. And it is for these reasons 1992. And he was married to her? He was married to her. They've been married for some time. Let me make sure I get that right, Your Honor. Yes, I believe so. So the crime of alien smuggling occurred prior to the statute? The crime of alien smuggling occurred, yes. More than 10 years before? It did. The alien smuggling occurred prior to the adoption of the statute that you're dealing with, correct? Adoption of the statute prior to the statute. And the statute was when? The statute for the waiver. I'm sorry, Your Honor, I'm not sure. Of 1227A2E. The alien smuggling occurred in 92, yes, prior. 19-what? 92. And the statute was when? The statute for you know what, I misspoke, Your Honor. I'm sorry. Because both occurrences of domestic violence occurred in 1992. That was a misspeaking of the date. Right. But the alien smuggling occurred after that. Yes, it did. It did occur after that fact. So based on the fact that And the hearing was when? 2003. June of 2003. The board decision was July 7th of 2004. The board decision was July 7th of 2004. The board decision was July 7th of And the alien smuggling occurred in 1997. Well, did you argue before? Okay. So that's why the board just relied on the alien smuggling. That's correct. Well, the board relied on both, but But the alien smuggling would be sufficient if it qualified. If it qualified. If the waiver didn't apply. The waiver could not apply is what they're saying. Yeah. But that alone would have been sufficient. But the board decided it was sufficient to render him incapable of establishing good moral character. When were the domestic violations? Both of those occurred in 1992. 92? Yes. And since both of them- The importance of that is that the 1996 is the time in which those could be considered. That's correct, Your Honor. And since they both occurred prior to September 20th, I believe, 1996, then they cannot be used, which I said the government itself in its reply brief concedes that point. The only issue in regards now is their belief that it was harmless error for the board and the I.J. to use those because Mr. Colleen helped to smuggle his wife into the U.S. So they're saying that he would have been denied anyway. Our argument is that he should not have been denied based on either of those points because he is eligible for the waiver for alien smuggling. Okay. Thank you. Thank you. Thank you. May it please the Court, Eric Marsteller for the Attorney General. I'd just like to raise a few points. As Petitioner Counsel mentioned, the government does concede that the ground of removability based on the domestic violence convictions is invalid. So we're just focusing on the 212D11 issue again here. I'd also like to point out that Judge Hugg mentioned a board decision earlier about the 10-year stopping at the time of the final agency decision. In this case, the alien smuggling occurred in 97. The board decision was 04. So this all is within that 10-year period. Yeah, I think we finally got the answer. Okay. I'd also like to point out the Gonzales-Gonzales case, which was the basis for the Moran decision. In Moran, the Court said that the language of inadmissibility could apply to cancellation, and it cited Gonzales-Gonzales. I'd like to cite Gonzales-Gonzales. First of all, in our brief, we mentioned why we disagree with that analysis. But I'd also like to point to Gonzales-Gonzales for another reason. In this case, let me start with this case. In this case, 101F3 says that an alien cannot establish good moral character if he's a person in one of the classes of persons described in 1182A60, the alien smuggling provision, and it uses the described in language. In Gonzales-Gonzales, the Court was referring to a different section of the cancellation statute. It was 240A-B-C, I can't recall. But it was the criminal part where it said you can't be eligible for cancellation if you've been convicted in a provision in 1182A2, 1227A2, or 1227A3. In Gonzales-Gonzales, this Court found that what that meant was that the language says convicted under those sections, and the Court found that what that meant was convicted as described under those sections, as described in those sections. So if any offense described in 1182A2, 1227A2, or any of those three sections, any offense described therein made the alien ineligible for cancellation under that ground. As it applies to this case, 101F3, the good moral character provision, uses the language described in the alien smuggling provision. And we feel that what it references is any conduct described in the alien smuggling provision renders an alien unable to establish their good moral character. Okay, but all of this goes to the fact that, to your position, that Moran was wrong. We do believe Moran was wrong, Your Honor. And we're still bound by it. Well, if the Court were to disagree with our arguments regarding DICTA and also our... I'm not sure that it's been covered, and I just want to know what the government's position is. As you'll recall, in Moran, we had a case pending, Cuervasi. And at the very beginning of the discussion, it sets it aside as not applicable, and then goes on.  In that case, which preceded Moran by some time, we said that the IJ and BIA correctly determined that Cuervasi fell within the provisions based upon he admitted that, in 1995, he paid a smuggler to break into his house,  bring his wife and child into the United States, leaving from Mexico. No exceptions or other waivers to the alien smuggler provision apply to Cuervasi. And then it says, C, and it cites 1182 D-1, which is the waiver provision. D-11, I believe, right? Yes. Actually, that was going to be my next... ...when we have a case on the books that says you can't do that. I would agree. That was actually my next point, Your Honor. So that's your next point? That was my next point. Well, why don't you give me that next point then, because it's a matter of concern to me. All right. I happen to have been on the panel that decided the first case, so I'm aware of it. And, again, just to make sure, this is the voluntary departure case, right, Corisani? And we would contend that Moran is actually in conflict with Corisani to a certain extent, maybe to a great extent. Corisani ultimately was dealing with the same good moral character issue that we have here, this 101-F-3 issue. The difference, the only really substantive difference, is that that case dealt with the voluntary departure instead of the cancellation of removal. And that's the grounds on which it was distinguished. Yes, but our argument, and this is what we think the Moran court overlooked, is that ultimately what's at issue is, is there a waiver to good moral character, not does the waiver apply in the cancellation context. And we believe that there is no waiver to good moral character. And we believe that's what the Corisani court ruled, and we would certainly agree with the Corisani court's decision. Well, but if the Moran court distinguished it. I think it's a distinction. You think it's a distinction without a difference, but they thought it was material. Yes, and I think we would, as I mentioned, we agree. We think it's a distinction without a difference, that there really is no distinction between the good moral character for voluntary departure and the good moral character for cancellation, and there was really no need to say that the language of inadmissibility should always be translated into the language of cancellation of removal. But the government has never put that squarely before us in a petition for rehearing in bank. In Moran, you mean? Yes, Moran and Cormisani are in tension and conflict, and we have to decide the conflict. The government has never put that squarely to our court in a petition for rehearing in bank, has it? We've never lost yet. I think that's the problem, is the Moran court, the government prevailed. I understand your point, but you aren't going to prevail in every case. But it's the rare case when the government seeks further review when the government has prevailed. We have done memorandum dispositions. If you want to jettison the issue by saying the government doesn't care enough about it to bring it to our attention under a petition for rehearing in bank, then we won't bother with it. Well, that's not what we're saying, Your Honor. The Moran court is the only court that specifically directly confronted this, and we think that if it was to ‑‑ if there was to be another decision, the government ‑‑ Well, we have had memorandum dispositions unpublished. Right. Decidable dispositions. Right. There have been other panel decisions, some saying that Moran is controlling and others saying it's not. But there has not been a subsequent published decision on the issue for which further review would be sought. And then, again, just again, the waiver exhaustion argument, I'd like to preserve that. And I'd also like to point out that some of the petitioner's counsels have mentioned that, well, Moran was decided after their brief to the board, so they wouldn't have known to have cited that. I think that underscores that what the Moran court did wasn't clear on the face of the statute, that none of ‑‑ the immigration bar didn't think to make the inferential leap that the inadmissibility language should apply to cancellation. I'd also like to point out that Moran did say it was a case of first impression, so there was no conflict in court decision that would have prevented any of these petitioners from raising these arguments before the board in the first instance. Anyway, for all the reasons you've heard this morning, we urge this petition is denied. Thank you. Your Honor, there are a couple of points that have been brought up this morning that I'd like to address. And one of them is the elegant sophistry that I think has been used by the Department in trying to pick apart the conduct of alien smuggling versus whether alien smuggling renders one inadmissible. Section 101F3 of the Immigration and Naturalization Act describes different items that are to be considered as not being ‑‑ a person cannot do those and be of good moral character. The waiver for alien smuggling also is talking about conduct that doesn't make a person admissible to the United States. Because the words good moral character are not inserted into the actual statute itself for the waiver, it can be inferred from the fact that in 101F3 the statute says you cannot have good moral character and perform this conduct. So I understand what the Department is trying to do, and actually it's quite a good argument. But I don't believe that it stands upon closer review. And in addition, I want to go back to this repetition that the waiver provision in Moran is simply dicta. Of course, there's always going to be arguments about what is and what is not dicta. But what I have noticed is that no one has discussed the two different types of dicta, whether we're talking about overture dicta or if we're talking about judicial dicta. Judicial ‑‑ all right. Thank you. The case just argued is submitted for decision.
judges: Wallace, Hug, Schroeder